**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
In re:                                                    :
                                                          :
     KENNETH IRA STARR;                              :
     STARR & COMPANY, LLC; and                        :
     STARR INVESTMENT ADVISORS, LLC, :          Chapter 7
                                                          :    Case No. 11-10219 (MEW)
            Debtors.                        :
------------------------------------------------------------x
                                                          :
ROBERT L. GELTZER, *as Trustee for the Estate*  :
*of Kenneth Ira Starr, et al.*,                           :
                                                          :
          Plaintiff,                         :
                                                          :    Adv. Proc. No. 14-02395 (MEW)
     - against -                                 :
                                                          :
HAROLD EVANS and TINA BROWN,             :          JOINT PRETRIAL ORDER
                                                          :
          Defendants.                        :
                                                          :
------------------------------------------------------------x

     The parties having conferred among themselves and with the Court pursuant to
Fed. R. Civ. P. 16, the following statements, directions and agreements are adopted as the
Pretrial Order herein.

## I.     NATURE OF THE CASE

     In this adversary proceeding, Plaintiff Robert L. Geltzer, as Chapter 7 Trustee (the
"**Trustee**") asserts that Defendants Harold Evans and Tina Brown ("**Defendants**") owe
$93,127.89 in unpaid fees due to the Debtors' estate for services which the Trustee alleges were
performed by the Debtor Starr & Company, LLC ("**S&C**") on Defendants' behalf during the 17-
month period January 2009 through May 2010.[1]

     In his original Complaint filed on November 3, 2014, the Trustee brought one cause of
action for turnover against only Mr. Evans. On January 26, 2015, Mr. Evans moved to dismiss
the Complaint, arguing that (i) the Trustee had admitted on the face of the Complaint that the
funds he sought were in dispute and thus could not be the subject of a turnover action under well-
settled law, and (ii) the boilerplate pleadings in the Complaint did not meet the requirements of

---

[1]     During the course of discovery, Defendants produced to the Trustee evidence that they had paid
S&C for services rendered during the month of December 2008 in the amount of $5,282.30. Therefore,
the Trustee has reduced from $98,410.19 to $93,127.89 the amount he seeks to recover against
Defendants.

Federal Rule of Civil Procedure 8(a).  On February 13, 2015, the Trustee filed the First Amended Complaint against both Mr. Evans and Ms. Brown, adding factual allegations and claims for account stated and quantum meruit in addition to the turnover claim.  Thereafter, Defendants consented to the filing of a Second Amended Complaint in which the Trustee dropped the turnover claim (leaving intact the account stated and quantum meruit claims), and Mr. Evans withdrew his motion to dismiss.  In addition to judgment against Defendants for the aforesaid amount of $93,127.89, the Trustee seeks to recover from Defendants attorneys' fees and costs.

On March 23, 2015, Defendants answered the Second Amended Complaint, asserting, *inter alia*, that Debtor Kenneth Starr ("**Starr**") on behalf of S&C, and Mr. Evans on behalf of himself and Ms. Brown, mutually modified any prior oral agreement between S&C and Defendants (Defendants contend that there was no prior written agreement between S&C and Defendants) and unequivocally orally agreed that S&C would perform all future services for free.  Mr. Evans and Ms. Brown therefore assert that the Trustee cannot meet his burden on either the account stated or quantum meruit causes of action, and they respectfully request that this Court enter judgment in favor of Defendants, dismiss the Second Amended Complaint with prejudice, and award Defendants attorneys' fees, costs, and such other relief as the Court deems just and proper.

## II.    BASIS FOR JURISDICTION, WHETHER THE CASE IS CORE OR NON-CORE, AND WHETHER THE BANKRUPTCY JUDGE MAY ENTER FINAL ORDERS OR JUDGMENT

The United States District Court for the Southern District of New York (the "**District Court**") has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b).  By virtue of 28 U.S.C. § 157(a), and the Amended Standing Order of Reference, dated January 31, 2012 of Chief Judge Loretta A. Preska of the District Court, this adversary proceeding is automatically referred to the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**").

The Trustee contends that this adversary proceeding is a core proceeding under, among other provisions, 28 U.S.C. § 157(b)(2)(A) and (O).  (*See* Second Amended Complaint ¶ 5.) Defendants deny that this is a core proceeding but consent to the entry of final orders and judgments in this adversary proceeding by the Bankruptcy Court.  (*See* Answer ¶ 5; 28 U.S.C. §157(c)(2).).  The Trustee also consents to the entry of final orders and judgments in this adversary proceeding by the Bankruptcy Court.  (*See* Second Amended Complaint ¶ 5.)

## III.   STIPULATED FACTS

1.      The Trustee and those working on his behalf with regard to this adversary proceeding, including his retained professionals, have not located a written agreement concerning the scope, fees, or payment terms for any services to be performed by S&C on behalf of Defendants.

2.      Starr controlled S&C at all times during the period when S&C is alleged to have performed services on behalf of Defendants.

2

3.      Starr had authority at all times during the period when S&C is alleged to have performed services on behalf of Defendants to set the fees or payment terms for such services.

4.      S&C employees Elaine Lok, Ronald Starr, and Pat Wright did not have any involvement in, and do not have any knowledge of, the billing by S&C of Defendants.

5.      No invoice mailed or otherwise transmitted by S&C to Defendants subsequent to January 1, 2009 included or showed an unpaid balance from a previous billing period.

6.      On or about September 10, 2010, Starr pled guilty in a Federal criminal proceeding to wire fraud, money laundering, and fraud by an investment adviser, and is presently serving a seven and one-half year prison term in the Federal prison facility located in Otisville, New York.

7.      Employees of S&C completed certain tax returns on behalf of Mr. Evans, Ms. Brown, and certain of their business entities and immediate family members for the years ending December 31, 2008 and December 31, 2009.

8.      With regard to the GMR Inventory List (*see* DXV), boxes (a) that are not within the color shadings, or (b) were not retrieved by former clients of the Debtors as per the protocol set forth in the Trustee's Notice of Intent to Abandon Certain Customer Records (*see* DXU), were destroyed in accordance with the terms of the Notice.

## IV.    PARTIES' CONTENTIONS

The pleadings are deemed amended to embrace the following, and only the following, contentions of the parties:

### A. Trustee's Contentions

1.      During the 17-month period January 2009 through May 2010 (the "**17-Month Period**"), S&C provided various professional services on behalf of Defendants, Defendants' family members, and/or various entities in which the Defendants held a controlling interest(s), including: (a) tax return preparation and tax planning services; (b) preparation of periodic financial statements; (c) negotiations with taxing authorities; (d) investment advising with respect to various funds, including funds managed by the Blackstone Group, Allen Capital, Bear Stearns, Center Capital, Terremark and/or affiliates thereof; (e) analyses of Defendants' QuickBooks records; (f) calculation of amounts to be withheld by Defendants for tax purposes respecting Defendants' salary payments to their household employees and preparation of their payroll tax returns; (g) consulting and advisory services and other financial-related services; and (h) assistance in obtaining refinancing for Defendants' multimillion dollar cooperative apartment located at 447 East 57th Street, New York, New York 10022 (collectively, the "**Professional Services**").

2.      S&C's Professional Services on behalf of Defendants with respect to tax returns during the 17-Month Period were performed by Elaine Lok, a Senior Manager at S&C. Those

3

Professional Services performed by Ms. Lok included the preparation of years 2008 and/or 2009
Federal and multiple state income tax returns and additional tax filings as follows:

     a.  Defendants' joint Federal income tax return for 2008;

     b.  Defendants' joint New York State income tax return for 2008;

     c.  Defendants' joint income tax returns for 2008 for the states of California, Illinois, Massachusetts, Michigan, Minnesota, New Jersey, Ohio, Oklahoma, and Pennsylvania;

     d.  Harold Evans & Associates, LLC New York City Partnership Declaration of Estimated Unincorporated Business Tax for 2009;

     e.  Harold Evans Associates Pension Scheme Internal Revenue Service Form 3520-A for year ending February 28, 2009;

     f.  Federal, New York State and New York City income tax returns for Defendant Tina Brown's limited liability company, Middlemarch Media, LLC for 2008;

     g.  New York State Partnership, Limited Liability Company, and Limited Liability Partnership Filing Fee Payment Form for Tina Brown's limited liability company, Middlemarch Media, LLC for 2009;

     h.  Federal, New York State and New York City income tax returns for Harold Evans' limited liability company, Innovators Ventures II, LLC for 2008;

     i.  Federal, Massachusetts and New York income tax returns for Defendants' son, George Evans, for 2009; and

     j.  Federal and New York State income tax returns for Defendants' daughter, Isabel Evans, for 2009.

     3.     In addition, Ms. Lok, while still employed at S&C, prepared tax projection worksheets with respect to Defendants' and their corporate entities' 2009 tax returns that she utilized to complete their 2009 tax returns when she was subsequently employed by BCRS & Associates after leaving the employ of S&C at the end of May 2010.  BCRS & Associates charged Defendants in the range of $20,000-$25,000 for the preparation of those 2009 tax returns.

     4.     During the 17-Month Period, Elaine Lok worked a total of 419 hours on services for Defendants, various corporate entities in which one or the other Defendant had the sole or controlling interest, Defendants' children Isabel Evans and George F. Evans, and/or Defendant Evans' Harold Evans Associates Pension Scheme.  Elaine Lok's billable rate at that time was $285 per hour.  Accordingly, the reasonable value of her services alone during the 17-Month

4

Period was $119,415, in excess of the amount for which the Trustee seeks recovery against Defendants in this adversary proceeding.

5.      During the 17-Month Period, S&C sent to Defendants quarterly breakdowns of payroll taxes and withholding for Defendants' personal household employees.

6.      During the 17-Month Period, S&C charged Defendants a fixed fee of $5,250.00 per month, plus disbursements, for the Professional Services.  S&C billed Defendants for same by way of monthly invoices (the "**Invoices**") sent to Defendants at their Manhattan apartment residence, 447 East 57th Street, New York, New York 10022-3064.  Defendants' long-time household assistant, Betty Greif, acknowledged in her deposition testimony that she received all of the Invoices.

7.      Defendants never paid S&C, nor have they ever paid the Trustee, for any of those Invoices, the aggregate amount of which is $93,127.89 (the "**Total Unpaid Amount**").

8.      Defendants were experiencing cash flow problems during the 17-Month Period, such that Defendants were not generating enough income to pay bills in a timely manner, including, but not limited to, the Invoices.

9.      Although the Trustee was not able to locate copies of the January 2010 and February 2010 invoices reflecting Professional Services performed by S&C for or on behalf of Defendants, the existence of such invoices are reflected on S&C's "Sales Analysis by Customer Report 01/01/09 to 03/01/10," a copy of which is annexed as Exhibit B to the Trustee's Second Amended Complaint.

10.      Neither Starr nor Defendants ever said to S&C employees Elaine Lok, Ronald Starr, or Pat Wright that any services S&C performed on behalf of Defendants were to be performed for free.

11.      Without waiving any evidentiary objections the Trustee may have, Defendants were very pleased with the Professional Services performed by S&C, as is evidenced by Evans' letter dated August 17, 2009, wherein he states in pertinent part, "I'd hope you would continue to oversee the taxes, but I do feel uncomfortable having our taxes prepared 'on the house' by your terrific Elaine. . . . [M]aybe later in the year we could come to some arrangement for remittances from me?"  Defendants never made payment of all or any portion of the Unpaid Amount subsequent to the aforesaid August 17, 2009 letter from Evans to Starr.

12.      Any testimony by any witness in the adversary proceeding, including, without limitation, by Defendants and by Defendants' former assistant Betty Greif, that Starr allegedly told Evans at any time that the Professional Services were being provided free of charge and/or "on the house," is not admissible in that any such testimony constitutes hearsay under the applicable Federal Rules of Evidence.

13.      Without waiving any evidentiary objections the Trustee may have, there is no email from Defendants' former assistant Betty Greif earlier than her email to Defendant Evans of June 21, 2010 which makes reference to Evans' telephone conversation with Starr on September

5

3, 2009 (to which Evans had Greif listening in on without Evans disclosing same to Starr), in which conversation Evans alleges that Starr confirmed that the tax services which S&C was performing on Defendants' behalf were "on the house."

14.    Without waiving any evidentiary objections the Trustee may have, even assuming, *arguendo*, that Kenneth Starr and Evans entered into an oral "agreement" whereby Evans and Brown would not have to pay for any future Professional Services performed by S&C (evidenced only by Evans' self-serving insistence that such a conversation occurred), as said oral "agreement" could not be completed in less than one year it is unenforceable under N.Y. General Obligations Law Section 5-701(a)(1).

15.    Defendants were properly served with the Notice of Trustee's Intent to Abandon Certain Customer Records, filed in the Debtors' substantively consolidated bankruptcy cases on May 3, 2012 (the "**Abandonment Notice**"), which provided notice of the Trustee's intention to abandon various records of former clients of the Debtors, including Defendants, that were located in a storage facility in New Jersey, and Defendants failed to avail themselves of the opportunity afforded them under the Abandonment Notice to retrieve those records from said facililty, as a result of which the Defendants' records located in said facility were destroyed.

16.    Defendants Evans and Brown never filed any proofs of claim against any of the Debtors in the subject bankruptcy cases, and the bar date for doing same was July 23, 2012.

17.    Defendants last payment to S&C was on March 27, 2009, when Defendants paid S&C $5,282.30 in furtherance of Invoice No. 21864 dated January 1, 2009 for services performed in December 2008.

## B. Defendants' Contentions

1.    Defendants and S&C never had any written agreement concerning the scope, fees, or payment terms for any services performed by S&C on behalf of Defendants.

2.    Starr had authority at all times during the period when S&C purportedly performed work on behalf of Defendants to agree that S&C would perform work or services on behalf of Defendants for no charge.

3.    In late 2008 or early 2009, Mr. Evans told Mr. Starr that Defendants no longer intended to use or pay for S&C's services. Attempting to keep Defendants as clients, Mr. Starr unequivocally agreed on behalf of S&C that all future services performed by S&C on behalf of Defendants would be "on the house," meaning that Defendants did not have to pay for such services (the "Agreement"). Accordingly, the Trustee cannot meet his burden of proving that S&C had an expectation of compensation for any of the services for which the Trustee seeks payment in the Second Amended Complaint.

4.    As a result of the Agreement, the Trustee's claims are barred, in whole or in part, because any prior oral agreement between Debtors and Defendants was modified or superseded by the new Agreement (which was never further modified) under which Debtors agreed to provide all future services to Defendants for free.

6

5.      As a result of the Agreement, the Trustee's claims are barred, in whole or in part, because Starr unequivocally agreed that Defendants were not obligated to pay for the services for which the Trustee seeks payment in the Second Amended Complaint, and in doing so relinquished, released, or waived any right to payment for those services.

6.      As a result of the Agreement, the Trustee's claims are barred, in whole or in part, by the doctrine of estoppel because Starr unequivocally told Defendants that they were no longer obligated to pay, would no longer be billed, and could ignore any invoices for any services Debtors sent to Defendants.  Starr knew that Defendants would rely on these statements, and Defendants did reasonably rely on these statements when they continued to accept services from Debtors without paying Debtors.

7.      As a result of Agreement, the Trustee's claims are barred, in whole or in part, because Defendants unequivocally told Starr that they would no longer pay Debtors for any future services.  Starr fully understood and acknowledged that Defendants would no longer pay for any services provided by Debtors.  S&C voluntarily continued to perform certain services for Defendants each time a service was performed after the Agreement, and thereby assumed the risk that Defendants would not pay for those services.

8.      On or about September 3, 2009, immediately upon learning that that his assistant, Betty Grief, had received an invoice from S&C despite the aforementioned Agreement, Mr. Evans telephoned Mr. Starr to dispute that Defendants owed any money to S&C.  Accordingly, the Trustee cannot meet his burden of showing that an account was accepted as correct or that Defendants promised to pay S&C.

9.      On or about September 3, 2009, Mr. Starr told Mr. Evans that any invoices sent by S&C to Defendants were a mistake and that he should ignore them.  During this conversation, Mr. Starr unequivocally reaffirmed that Defendants did not have to pay any fees to S&C.  This conversation confirms each of the legal conclusions stated in items 3-8 above.

10.      The Agreement was an oral, at-will agreement with no specified duration, under which each instance of services provided by S&C would be provided for free.  Accordingly, it does not fall under the ambit of N.Y. General Obligations Law § 5-701(a)(1) because nothing in its own terms prohibits its complete performance within one year.

11.      None of the invoices for which the Trustee seeks payment (attached as Exhibit A to the Second Amended Complaint) were found in Defendants' files.

12.      The Trustee and those working on his behalf with regard to this adversary proceeding, including Andrew Plotzker and Vinay Agarwal of Davis, Graber, Plotzker & Ward LLP (the "Court-Appointed Accountants"), have not located any records that show whether a particular invoice was mailed or otherwise transmitted by S&C to Defendants.

13.      The Trustee and those working on his behalf with regard to this adversary proceeding, including the Court-Appointed Accountants, do not know if any of the invoices for which he seeks payment (attached as Exhibit A to the Second Amended Complaint) were mailed or otherwise transmitted to Defendants.

14.    Elaine Lok, Ronald Starr, and Pat Wright do not have any knowledge about whether the invoices for which the Trustee seeks payment were mailed or otherwise transmitted by S&C to Defendants.

15.    On or about March 27, 2009, Defendants paid S&C $5,282.30 in full satisfaction of Invoice # 21864 dated January 1, 2009, but this payment was never reflected in S&C's books and records.

16.    The Trustee and those working on his behalf with regard to this adversary proceeding, including the Court-Appointed Accountants, have not located copies of invoices dated January 2010 or February 2010 for services alleged to have been performed by S&C on behalf of Defendants during the months of December 2009 and January 2010, respectively. Accordingly, the Trustee cannot meet his burden of showing that any invoice was ever created by S&C or that an account was stated for those two months.

17.    S&C never sent any communication to Defendants subsequent to December 1, 2008 concerning any overdue or unpaid invoice, even though it was S&C's practice to send such past due notices.  Accordingly, the Trustee's claims are barred, in whole or in part, because S&C failed to mitigate losses from Defendants' alleged non-payment of the amounts sought by the Trustee.

18.    The invoices for which the Trustee seeks payment (attached as Exhibit A to the Second Amended Complaint) do not qualify as business records because there are indications of a lack of trustworthiness, including but not limited to lack of proper recordkeeping of payments made by Defendants, non-sequential invoice numbers, deliveries to other S&C clients improperly charged to Defendants' account, admissions by Starr that he did not prioritize good recordkeeping, and other evidence that there was a pattern of sloppiness in S&C's books and records.  Accordingly, the invoices for which the Trustee seeks payment cannot form the basis of an account stated claim.

19.    Following the aforementioned Agreement made between Mr. Evans and Mr. Starr in late 2008 or early 2009, S&C no longer performed financial and investment advising services on behalf of Defendants, but the monthly fees for which the Trustee seeks payment were not reduced to account for this reduction in services.  Accordingly, the Trustee cannot meet his burden of showing that the amount sought in the Second Amended Complaint is reasonable.

20.    The Trustee's claims are barred, in whole or in part, because S&C and/or the Trustee destroyed or permitted to be destroyed relevant or discoverable documents and information that were in the custody and control of the Trustee.

21.    The Trustee's claims are barred, in whole or in part, by the doctrines of unclean hands or *in pari delicto* or by other equitable considerations because Debtors are guilty of immoral, unconscionable conduct or breach of fiduciary duties, including without limitation, sending Defendants fraudulent and inaccurate invoices.  This conduct is directly related to the subject matter of this litigation and is imputed to the Trustee.

22.    The Trustee's claims are barred, in whole or in part, because granting relief requested by the Trustee would be unconscionable and a violation of public policy.

23.      Neither the Trustee, nor anyone acting on his behalf with regard to this adversary proceeding (including the Court-Appointed Accountants), know the substance or nature of any communications between Starr and Defendants concerning the scope, fees, or payment terms for any work or services performed by S&C on behalf of Defendants during the period January 2009 through May 2010, or concerning the fees or payment terms for such work or services.

24.      The Trustee has not, and had not at the time he filed the Second Amended Complaint, interviewed or otherwise asked Starr about any communications between Starr and Defendants.

25.      The Trustee has not, and had not at the time he filed the Second Amended Complaint, interviewed or otherwise asked Starr about the scope, fees, or payment terms for any work or services alleged to have been performed by S&C on behalf of Defendants during the period January 2009 through May 2010.

26.      The Trustee has no personal knowledge, and did not have any knowledge at the time he filed the Second Amended Complaint, of any of the facts supporting the claims asserted in paragraphs 17-18, 23-25, and 28-29 of the Second Amended Complaint.

27.      The Trustee has no personal knowledge about whether S&C performed any of the Professional Services as defined in the Second Amended Complaint during the period January 2009 through May 2010.

28.      The Trustee has no personal knowledge of the source of the information contained in each of the invoices for which he seeks payment in the Second Amended Complaint.

29.      The Trustee has no personal knowledge of the method or circumstances by which each of the invoices for which he seeks payment in the Second Amended Complaint was prepared.

## V.      ISSUES TO BE TRIED

The parties agree that the following issues are to be tried:

1.      Whether or not the Trustee can meet his burden of proving the following elements of his cause of action for account stated: (1) an account was presented to Defendants for each month for which the Trustee seeks payment; (2) Defendants accepted the each account as correct; and (3) Defendants promised to pay each amount stated.

2.      Whether or not the Trustee can meet his burden of proving the following elements of his cause of action for quantum meruit: (1) S&C performed in good faith; (2) Defendants accepted the services; (3) S&C had a reasonable expectation of compensation; and (4) the amount the Trustee seeks in the Second Amended Complaint for the services is reasonable.

3.      Whether or not Starr and Evans agreed that all services rendered by S&C on behalf of Defendants after early 2009 were and would be provided "on the house,"[2] and therefore whether or not the Trustee's claims are barred, in whole or in part, because:

  a.  any prior agreement between Debtors and Defendants was modified or superseded by a new agreement under which Debtors agreed to provide certain services to Defendants for free; and/or

  b.  Starr relinquished, released, or waived any right to payment for those services; and/or

  c.  the doctrine of equitable estoppel bars the Trustee's claims; and/or

  d.  S&C voluntarily continued to perform services for Defendants and thereby assumed the risk that Defendants would not pay for those services.

4.      Whether or not assuming, *arguendo*, Starr and Evans did agree that all Professional Services rendered by S&C on behalf of Defendants after early 2009 were and would be provided "on the house," such oral agreement is enforceable under N.Y. General Obligations Law Section 5-701(a)(1).

5.      Whether or not the Trustee's claims are barred, in whole or in part, because S&C and/or the Trustee destroyed or permitted to be destroyed relevant or discoverable documents and information; or whether or not Defendants waived their right to make this argument when they did not retrieve their documents from the storage facility in accordance with the protocol set forth in the Abandonment Notice.

6.      Whether or not the Trustee's claims are barred, in whole or in part, because Debtors failed to mitigate losses from Defendants' alleged non-payment of the amounts sought by the Trustee.

7.      Whether or not the Trustee's claims are barred, in whole or in part, by the doctrines of unclean hands or *in pari delicto* or by other equitable considerations.

8.      Whether or not the Trustee's claims are barred, in whole or in part, because granting relief requested by the Trustee would be unconscionable and a violation of public policy.

The Trustee asserts that the following should be included as an issue to be tried, but Defendants object on the grounds that it merely states an evidentiary objection rather than an issue for trial:

---

[2]      The Trustee's consent to the inclusion of Issue No. 3 is without prejudice to his position stated in Issue No. 9 below, that any testimony by any witness in this adversary proceeding, including, without limitation, by Defendants and by Defendants' former assistant Betty Greif, that Starr allegedly told Evans at any time that services were being provided free of charge and/or "on the house," and any documentary evidence referencing such a statement, is inadmissible on the ground that any such testimony and/or documentary evidence constitutes hearsay under the applicable Federal Rules of Evidence.

9.      Whether or not any testimony by any witness in this adversary proceeding, including, without limitation, by Defendants and by Defendants' former assistant Betty Greif, that Starr allegedly told Evans at any time that services were being provided free of charge and/or "on the house," and any documentary evidence referencing such a statement, is inadmissible on the ground that any such testimony and/or documentary evidence constitutes hearsay under the applicable Federal Rules of Evidence.

## VI.    TRUSTEE'S EXHIBITS

PX1:  October 1, 2009 letter from Elaine Lok to Defendants re: various tax returns.  (*See* Evans/Brown Dep. Ex. ("**Dep. Ex.**") 1; Evans/Brown Production Bates Stamped ("**EB**") EB744-48.)

PX2-12 (*See* Dep. Ex. 2; EB749-1022):

PX2:  Defendants' 2008 Joint Federal Income Tax Return for 2008.  (*See* EB749-853; EB898; EB1022.)

PX3:  Defendants' 2008 New York State and New York City Tax Return.  (*See* EB915-43; EB991-99.)

PX4:  Defendants' 2008 California State Income Tax Return.  (*See* EB854-65; EB944-69.)

PX5:  Defendants' 2008 Illinois State Income Tax Return.  (*See* EB970-76.)

PX6:  Defendants' 2008 Massachusett State Income Tax Return.  (*See* EB866-85; EB977-90.)

PX7:  Defendants' 2008 Michigan State Income Tax Return.  (*See* EB886-97.)

PX8:  Defendants' 2008 Minnesota State Income Tax Return.  (*See* EB899-906.)

PX9:  Defendants' 2008 New Jersey State Income Tax Return.  (*See* EB907-14.)

PX10:  Defendants' 2008 Ohio State Income Tax Return.  (*See* EB1000-1009.)

PX11:  Defendants' 2008 Oklahoma State Income Tax Return.  (*See* EB1010-15.)

PX12:  Defendants' 2008 Pennsylvania State Income Tax Return.  (*See* EB1016-21.)

PX13:  Letter from Elaine Lok to Defendant Harold Evans re:  preliminary tax projection for 2009 income as of 12/16/09.  (*See* Dep. Ex. 3; Plaintiff-Trustee's Production Bates Stamped ("**PL**") PL1497.)

PX14:  2009 Tax Projection Table.  (*See* Dep. Ex. 4.)

PX15:  Harold Evans & Associates, LLC 2009 NYC Partnership Declaration of Estimated Unincorporated Business Tax. (*See* Dep. Ex. 5; PL7171-74.)

PX16:  2008 Tax Return for Harold Evans Associates Pension Scheme.  (*See* Dep. Ex.; EB429-36.)

PX17:  Middlemarch Media, LLC 2008 U.S. Return of Partnership Income (w/ cover page). (*See* Dep. Ex. 7; EB663-710.)

PX18:  Middlemarch Media, LLC 2009  NYS Tax Returns.  (*See* Dep. Ex. 8; PL8770-93.)

PX19:  Innovators Ventures II, LLC 2008 U.S. Return of Partnership Income.  (*See* Dep. Ex. 9; EB303-342.)

PX20:  George Evans 2009 Tax Return.  (*See* Dep. Ex. 10; PL11510-70.)

PX21:  Isabel Evans 2009 Tax Return.  (*See* Dep. Ex. 11; PL11571-11621.)

PX22:  4/29/10 Fax from Vickie Nikol to Betty Greif.  (*See* Dep. Ex. 12; EB634-37.)

PX23:  5/26/10 Fax from Vickie Nikol to Betty Greif.  (*See* Dep. Ex. 13; EB1023-26.)

PX24:  Harold Evans / Tina Brown 12/31/2009 Schedule of Investments.  (*See* Dep. Ex. 14; PL2360-66.)

PX25:  S&C Invoices to Defendants from 1/01/09 through 6/01/10 (w-backup for expenses). (*See* Dep. Ex. 15; PL8-69.)

PX26:  8/17/2009 Letter from Harold Evans to Ken Starr.  (*See* Dep. Ex. 16; EB1.)

PX27:  6/21/2010 Email exchange between Harold Evans and Betty Greif.  (*See* Dep. Ex. 17; EB605.)

PX28:  Defendants' Privilege Log.  (*See* Dep. Ex. 18.)

PX29:  Notice of Trustee's Intent to Abandon Certain Customer Records.  (*See* Dep. Ex. 22; PL84-PL134.)

PX30:  Purported to be portions of GRM Inventory List containing box numbers that contained Evans/Brown Account documents/files.  (*See* Dep. Ex. 48; PL11736-14548 (***NOT CONSECUTIVELY BATES STAMPED***).)

PX31:  6/15/10 Letter from Receiver to Clients of SIA and/or S&C.  (*See* Dep. Ex. 23.)

PX32:  9/9/13 Letter from Trustee to Harold Evans.  (*See* Dep. Ex. 24; PL3.)

PX33:  4/29/14 Letter from Trustee to Harold Evans.  (*See* Dep. Ex. 35; PL2.)

PX34:  Sales Analysis By Customer Report regarding Defendants 01/01/09 to 03/01/10.  (*See* Dep. Ex. 39.)

PX35:  3/29/10 - 4/01/10 Email exchange between Roseann Ragano and Holly Fiorino.  (*See* Dep. Ex. 45; PL223.)

PX36:  4/08/10 Email from Holly Fiorion to Roseann Ragano.  (*See* Dep. Ex. 46; PL142.)

PX37:  Elaine Lok Time Records.  (*See* Dep. Ex. 54; PL1430-1624 (***NOT CONSECUTIVELY BATES STAMPED***).)

- Defendants object to the admission of PX37 on the grounds of authenticity and relevance.

PX38:  Pat Wright Time Records.  (*See* Dep. Ex. 51 (***NOT CONSECUTIVELY BATES STAMPED***).)

- Defendants object to the admission of PX38 on the grounds of authenticity and relevance.

PX39:  Harold Evans & Associates, L.L.C. All Transactions for STARR & COMPANY, LLC. (*See* Dep. Ex. 55; EB299-300.)

PX40:  3.24.09 Email from Harold Evans to Betty Greif.  (*See* Dep. Ex. 56.)

PX41:  11.22.09 Email from Harold Evans to Betty Greif.  (*See* Dep. Ex. 57.)

PX42:  12.12.09 Email from Harold Evans to Betty Greif.  (*See* Dep. Ex. 58.)

PX43:  6.24.10 Email from Harold Evans to Betty Greif.  (*See* Dep. Ex. 59.)

- Defendants consent to the admission of PX43 based on Plaintiff's agreement not to argue that Defendants have waived the attorney-client privilege by so consenting.

PX44:  9.2.2009 Email from Tina Brown to Betty Greif.  (*See* Dep. Ex. 63.)

PX45:  9.2.2009 Email from Harold Evans to Betty Greif.  (*See* Dep. Ex. 64.)

PX46:  9.7.10 Letter from Harold Evans to Elaine Lok, BCRS Associates, LLC.  (*See* Dep. Ex. 66.)

PX47:  1.5.10 Memo from Pat Wright to Mike Paesano.  (*See* PL8685-86.)

PX48:  1.13.10 Memo from Pat Wright to Justin Winters.  (*See* PL3539-40.)

PX49:  1.20.10 Letter from Pat Wright to Frank Zeppieri (*See* PL3820.)

PX50:  2010 City National Bank Personal Financial Statement.  (*See* PL2349-53.)

## VII.    DEFENDANTS' EXHIBITS

DXA.    S&C overdue notice addressed to H. Evans and T. Brown dated February 1, 1999. (EB000011; Dep. Ex. 32)

- Trustee objects to admissibility on grounds of relevance.

DXB.    S&C overdue notice addressed to H. Evans and T. Brown dated April 1, 2000.
(EB000014-15; Dep. Ex. 33)

- Trustee objects to admissibility on grounds of relevance.

DXC.    QuickBooks Report showing payments by Harold Evans & Associates, L.L.C. to S&C
from April 7, 2000 through March 27, 2009.  (EB000299-300; Dep. Ex. 55)

DXD.    QuickBooks Report showing payments by Harold Evans & Associates, L.L.C. to S&C
from April 7, 2000 through March 27, 2009, totaling $561,859.24.  (EB000142-48)

DXE.    S&C overdue notice addressed to H. Evans and T. Brown dated February 1, 2006.
(EB000008; Dep. Ex. 34)

- Trustee objects to admissibility on grounds of relevance.

DXF.    December 23, 2008 letter from H. Evans to G. Wainer at Wallack Management re:
changing financial advisers and reviewing commitments.  Also includes accompanying
metadata showing document was printed on December 23, 2008.  (EB000005-06; Dep.
Ex. 61)

DXG.    Screen shot of cancelled check dated March 27, 2009 for $6,282.30 for "fee December
2008 & $1,000 IACI Contract."  Paid to the order of and deposited by Starr &
Company, LLC.  (EB000112-13; Dep. Ex. 38)

DXH.    August 17, 2009 letter from H. Evans to K. Starr expressing gratitude about services
performed "on the house." (EB000001; Dep. Ex. 16)

- Trustee objects to the admissibility of solely that portion of DXH containing Harold
Evans' letter to Kenneth Starr, which in making reference to Starr, states "I do feel
uncomfortable having our taxes prepared 'on the house' by your terrific Elaine" on
the grounds said portion of the letter constitutes hearsay.

DXI.    August 17, 2009 letter from H. Evans to K. Starr (same as above) with accompanying
metadata showing document was printed on August 18, 2009.  (EB000001-02; Dep. Ex.
62)

- Trustee objects to admissibility on grounds of hearsay.

DXJ.    March 30, 2010-April 1, 2010 emails between H. Fiorino and R. Ragano, attaching
Owed2.xls and discussing Outstanding Invoice project.  (PL0000223-33; Dep. Ex. 45)

DXK.    April 8, 2010 email from H. Fiorino to R. Ragano, attaching Owed2.xls and stating that
project is done.  (PL0000142-55; Dep. Ex. 46)

DXL.    June 15, 2010 letter from A. Cassirer, Receiver, to Clients of S&C re: requirement that
they pay outstanding bills in order to obtain files.  (Dep. Ex. 23)

DXM.    June 21, 2010 email from B. Greif to H. Evans re: September 3, 2009 telephone call with Starr.  (EB000605; Dep. Ex. 17)

- Trustee objects to admissibility on grounds of hearsay.

DXN.    June 22, 2010 email from H. Evans to B. Greif re: leaving Starr in 2008.  (EB000298; Dep. Ex. 19)

DXO.    First Report of the Temporary Receiver, Case No. 10-cv-4270, Doc. No. 18 (Bankr. S.D.N.Y. July 8, 2010).  (Dep. Ex. 29)

DXP.    September 7, 2010 letter from H. Evans to E. Lok re: conversation with Starr in 2008. Also includes metadata showing document was created on September 7, 2010. (EB000102 & non-stamped metadata; Dep. Ex. 66)

DXQ.    September 22, 2010 email chain including emails between D. Kesner and H. Evans re: Receiver's requirement that Defendants pay $100,000 in overdue fees in order to obtain files, and Starr confirming that Defendants did not have to pay.  (EB000115-19; Dep. Ex. 20)

- Trustee objects to the admissibility of that portion of DXQ containing Harold Evans' September 22, 2010 email to Daniel Kesner, which in making reference to Starr, states "We called him and he reffirmed [sic] it was a mistake and we were not to pay. Betty Greif heard the conversation too and made a record," on the grounds said portion of the email constitutes hearsay.

DXR.    September 23, 2010 email from B. Grief to H. Evans re: last payment to Starr and savings from cancellation of services.  (EB000136; Dep. Ex. 21)

- Trustee objects to the admissibility of that portion of DXR containing Harold Evans' September 23, 2010 email to Betty Greif, which in making reference to Starr, states "When you get a minute--what did I save by cancelling him from that date to the date of his arrest and/or the date of the confirming conversation you heard," on the grounds said portion of the email constitutes hearsay.

DXS.    Application for Order to Retain Accountant, Case No. 11-10219-mew, Doc. No. 45 (Bankr. S.D.N.Y. Sept. 6, 2011).  (Dep. Ex. 27)

DXT.    Rough transcript of interview of Kenneth Starr, October 24, 2011.  (PL0015004-78; Dep. Ex. 47)

- Trustee objects to authenticity and admissibility on the grounds the subject transcript is incomplete, unofficial and uncertified and is not relevant to the issues in this adversary proceeding.

DXU.    Trustee's Notice of Intent to Abandon Certain Customer Records, Case No. 11-10219 (ALG) (Bankr. S.D.N.Y. May 3, 2012).  (PL0000084-134; Dep. Ex. 22)

DXV.   Selected pages from GRM inventory showing S&C boxes related to Defendants that were destroyed.  (Non-sequential pages from PL0011736-14548; Dep. Ex. 48)

DXW.   Application of Davis, Graber, Plotzker & Ward, LLP for Approval of First Interim Allowance of Compensation and Reimbursement for Expenses as Accountants to the Chapter 7 Trustee for the Period August 1, 2011 Through August 31, 2012, Case No. 11-10219-mew, Doc. No. 125 (Bankr. S.D.N.Y. Nov. 26, 2012).  (Dep. Ex. 41)

DXX.   September 9, 2013 letter from R. Geltzer to H. Evans demanding payment of $96,108.46.  (PL0000003; Dep. Ex. 24)

DXY.   Application of Davis, Graber, Plotzker & Ward, LLP for Approval of Second Interim Allowance of Compensation and Reimbursement for Expenses as Accountants to the Chapter 7 Trustee for the Period September 1, 2012 Through August 31, 2013, Case No. 11-10219-mew, Doc. No. 189 (Bankr. S.D.N.Y. Nov. 25, 2013).  (Dep. Ex. 42)

DXZ.   April 29, 2014 letter from R. Geltzer to H. Evans demanding payment of $101,410.19. (PL0000002; Dep. Ex. 35)

DXAA.  Time entries for V. Agarwal and A. Plotzker dated June 10, 2014 through June 27, 2014.  (PL0014756; Dep. Ex. 40)

DXBB.  June 10, 2014 Email from V. Agarwal to M. Bruh re: inability to find engagement letter for Evans.  (PL0000234; Dep. Ex. 44)

DXCC.  Application of Davis, Graber, Plotzker & Ward, LLP for Approval of Third Interim Allowance of Compensation and Reimbursement for Expenses as Accountants to the Chapter 7 Trustee for the Period September 1, 2013 Through June 30, 2014, Case No. 11-10219-mew, Doc. No. 242 (Bankr. S.D.N.Y. Aug. 22, 2014).  (Dep. Ex. 43)

DXDD.  Complaint for Turnover of Estate Property, Case No. 14-02395-alg, Doc. No. 1 (Bankr. S.D.N.Y. Nov. 3, 2014).  (Dep. Ex. 28)

- Trustee objects to admissibility on grounds of relevance, in that this original Complaint has been superseded by the Trustee's Second Amended Complaint.

DXEE.  Second Amended Complaint without exhibits, Case No. 14-02395-cgm, Doc. No. 19 (Bankr. S.D.N.Y. Feb. 25, 2015).  (Dep. Ex. 37)

DXFF.  S&C invoices addressed to H. Evans and T. Brown attached as part of Exhibit A to Second Amended Complaint, Case No. 14-02395-cgm, Doc. No. 19 (Bankr. S.D.N.Y. Feb. 25, 2015).  (Dep. Ex. 31)

DXGG.  Sales Analysis by Customer Report listing invoices from January 1, 2009 through March 1, 2010, attached as Exhibit B to Second Amended Complaint, Case No. 14-02395-cgm, Doc. No. 19 (Bankr. S.D.N.Y. Feb. 25, 2015).  (Dep. Ex. 39)

DXHH.    Answer to Second Amended Complaint, Case No. 14-02395-mew, Doc. No. 22 (Bankr. S.D.N.Y. Mar. 23, 2015)

DXII.    Plaintiff-Trustee's Initial Disclosures Pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure, Made Applicable to the Above-Captioned Adversary Proceeding by Rule 7026 of the Federal Rules of Bankruptcy Procedure, dated April 15, 2015.

DXJJ.    Transcript of Deposition of Peter M. Lev, taken in the case of Robert L. Geltzer v. Susan Jaffe Tane, April 20, 2015.  (PL0014875-910; Dep. Ex. 30)

- Trustee objects to authenticity and admissibility on the grounds that Trustee has never seen a copy of this transcript signed by Peter M. Lev with corrections, if any, and in any event, the Federal Rules of Civil Procedure, Rule 32(a), made applicable to this adversary proceeding by Federal Rules of Bankruptcy Procedure, Rule 7032, preclude the use of such deposition testimony at trial in that Mr. Lev is not an unavailable witness under said rule.

DXKK.    Plaintiff-Trustee's Responses and Objections to Defendants' First Request for Production of Documents, dated May 4, 2015.

DXLL.    Non-Party Davis, Graber, Plotzker & Ward LLP's Responses and Objections to Defendants' Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Bankruptcy Case (or Adversary Proceeding), dated May 4, 2015.

DXMM.    Plaintiff-Trustee's and Davis, Graber, Plotzker & Ward LLP's Privilege Log, dated May 2015.

DXNN.    Plaintiff-Trustee's Responses and Objections to Defendants' First Set of Requests for Admission, dated May 4, 2015.

DXOO.    Plaintiff-Trustee's Responses and Objections to Defendants' Second Set of Requests for Admission, dated May 8, 2015.

DXPP.    A. Plotzker, CPA LinkedIn Profile as of May 14, 2015.  (Dep. Ex. 26)

- Trustee objects to admissibility on grounds of relevance.

DXQQ.    May 20, 2015 email from G. Skiff to S. Gant and C. Harrison re: Inventory List, explaining that unshaded boxes were destroyed.

DXRR.    May 22, 2015 letter from R. Wolf to S. Gant and C. Harrison re: response to May 15, 2015 letter memorializing May 14, 2015 telephonic conference.  (Dep. Ex. 50)

DXSS.    Subpoena from Trustee's Counsel, Tarter Krinsky & Drogin LLP, to Betty Grief to testify at deposition and produce documents, dated June 4, 2015.  (Dep. Ex. 60)

DXTT.   June 10, 2015 email from B. Greif to R. Wolf, forwarding March 23-24, 2009 emails between B. Greif and H. Evans re: paying Starr.  (Dep. Ex. 56)

DXUU.   June 10, 2015 email from B. Grief to R. Wolf, forwarding September 2, 2009 email from H. Evans to B. Greif re: Evans alarmed by continued Starr invoices.  (Dep. Ex. 64)

DXVV.   Application of Davis, Graber, Plotzker & Ward, LLP for Approval of Fourth Interim Allowance of Compensation and Reimbursement for Expenses as Accountants to the Chapter 7 Trustee for the Period July 1, 2014 Through May 31, 2015, Case No. 11-10219-mew, Doc. No. 333 (Bankr. S.D.N.Y. Aug. 3, 2015).

DXWW. Starr & Company, LLC Privacy Policy: "We retain records relating to professional services that we provide so that we are better able to assist you with your professional needs, and in some cases, to comply with professional guidelines."  (EB000141; Dep. Ex. 53)

- Trustee objects to admissibility on grounds of relevance.

DXXX.   October 21, 2015 email from G. Skiff to C. Harrison forwarding May 27, 2015 email from V. Agarwal to A. Plotzker re: Evans deposition.

- Trustee objects to the admissibility of that portion of DXXX containing Vinay Agarwal's May 27, 2015 email to Andrew Plotzker, which in making reference to Harold Evans, states "he has it in his mind that Starr stole from him and that Starr told him everything is free for him for him to stay," on the grounds said portion of the email constitutes hearsay.

No exhibit not listed by plaintiff or defendant may be used at trial except (a) for cross-examination purposes or (b) if good cause for its exclusion from the pretrial order is shown. Each side shall list all exhibits it intends to offer on its case in chief.  The list shall include a description of each exhibit.  All exhibits shall be pre-marked with each exhibit bearing a unique number or letter (numbers for plaintiff and letters for defendant), with the prefix PX for plaintiff's exhibits and DX for defendants' exhibits.  Two copies of each exhibit shall be delivered to chambers two weeks before the start of trial unless otherwise ordered by the Court.

## VIII.   STIPULATIONS AND OBJECTIONS WITH RESPECT TO EXHIBITS

Any objections not set forth herein will be considered waived absent good cause shown. The parties shall set forth any stipulations with respect to the authenticity and admissibility of exhibits and indicate all objections to exhibits and the grounds therefor.

The parties stipulate to the authenticity of all exhibits unless otherwise noted above.

Please see Trustee's objections to various of Defendants' exhibits enumerated in Part VII above.  In addition, Trustee reserves his right to object to the admissibility of any of Defendants' exhibits if (a) foundation for admissibility of the exhibit is not properly established, (b)

Defendants seek to introduce any inadmissible hearsay by relying on the admissibility of the exhibit as a whole, or (c) Defendants seek to introduce the exhibit for any other purpose not permitted by the Federal Rules of Evidence.

Please see Defendants' objections to various of Plaintiff's exhibits enumerated in Part VI above. Defendants' decision to not object to the admission into evidence of any exhibit is not intended as a concession about the exhibit's relevance or meaning. Defendants reserve their right to object to the admission of any of Plaintiff's exhibits if (a) foundation for admission of the exhibit is not properly established, (b) Plaintiff seeks to introduce any inadmissible hearsay through admission of the exhibit, or (c) Plaintiff seeks to introduce the exhibit for any other purpose not permitted by the Federal Rules of Evidence.

## IX.   TRUSTEE'S WITNESS LIST

Trustee intends to call the following witnesses:

1. Elaine Lok

2. Pat Wright

3. Harold Evans

4. Tina Brown

5. Betty Greif

## X.   DEFENDANTS' WITNESS LIST

Defendants intend to call the following witnesses and believe that only one day of trial is necessary:

1. Harold Evans

2. Tina Brown

3. Betty Greif[3]

4. Andrew Plotzker

5. Vinay Agarwal

The witnesses listed may be called at trial. No witness not identified herein shall be permitted to testify on either party's case in chief absent good cause shown. Each party shall list

---

[3]       In the event that Ms. Greif is unavailable to testify at trial, Defendants intend to submit her testimony via her deposition transcript. Trustee reserves the right to object to the submission into evidence of Ms. Greif's deposition testimony in lieu of live testimony.

the witnesses it intends to call on its case in chief and, if a witness's testimony will be offered by deposition, shall designate by page and line numbers the portions of the deposition transcript it intends to offer. Counsel are expected in good faith to offer only those portions of deposition testimony that are necessary and shall refrain from designating the entireties of deposition transcripts and from designating cumulative or irrelevant matters. Each party shall set forth any objections it has to deposition testimony designated by the other and the basis therefor.

## XI.   RELIEF SOUGHT

The plaintiff shall set forth the precise relief sought, including each element of damages.

The Trustee seeks a money judgment against Defendants, jointly and severally, in the amount of $93,127.89, together with the Trustee's attorneys' fees and costs, and such other and further relief as the Court deems just and proper.

Defendants respectfully request that this Court enter judgment in favor of Defendants and dismiss the Second Amended Complaint with prejudice. Defendants made an offer of judgment on May 21, 2015 and thus are entitled to costs pursuant to Federal Rule Civil Procedure 68. Defendants further respectfully request that this Court award Defendants attorneys' fees, costs, and such other relief as the Court deems just and proper.

## XII.   MISCELLANEOUS

The parties agree that some proposed exhibits contain sensitive personal information about Defendants and request an opportunity to redact or otherwise move for the sealing of certain exhibits before they are made public.

To facilitate a discussion of procedural matters at the final pre-trial conference, the parties have conferred and respectfully and jointly request the following:

Trustee and Defendants shall each be entitled up to 15 minutes for opening statements.

Defendants request that Trustee and Defendants shall each be entitled up to 10 minutes for closing statements.

Trustee intends to call the following two witnesses first, Elaine Lok and Pat Wright. Three of the remaining witnesses, Harold Evans, Tina Brown, and Betty Greif, are listed on both Trustee's and Defendants' witness lists.[4] Those three witnesses will be called once in an effort to facilitate efficient proceedings, and both Trustee and Defendants will have an opportunity to elicit both direct and cross examination testimony at that time. Accordingly, the parties propose the following order of examinations:

---

[4]   Harold Evans and Tina Brown are adverse to the Trustee in this adversary proceeding, and as such, the Trustee asserts that they should be deemed hostile witnesses during the Trustee's respective examinations.

1. Elaine Lok:  Trustee's direct examination, followed by Defendant's cross examination, followed by Trustee's redirect examination.

2. Pat Wright:  Trustee's direct examination, followed by Defendant's cross examination, followed by Trustee's redirect examination.

3. Harold Evans:  Trustee's direct examination, followed by Defendants' direct and cross examination, followed by Trustee's redirect and cross examination, followed by Defendants' redirect examination.

4. Tina Brown:  Trustee's direct examination, followed by Defendants' direct and cross examination, followed by Trustee's redirect and cross examination, followed by Defendants' redirect examination.

5. Betty Greif:  Trustee's direct examination, followed by Defendants' direct and cross examination, followed by Trustee's redirect and cross examination, followed by Defendants' redirect examination.

6. Andrew Plotzker:  Defendants' direct examination, followed by Trustee's cross examination, followed by Defendants' redirect examination.

7. Vinay Agarwal:  Defendants' direct examination, followed by Trustee's cross examination, followed by Defendants' redirect examination.

In order to facilitate efficient examination of witnesses, the parties respectfully request that their counsel be permitted latitude to pose leading questions of all witnesses.


Dated:  October 25, 2015


_____s/ Robert A. Wolf_____
Robert A. Wolf
Gregory J. Skiff
**TARTER KRINSKY & DROGIN LLP**
1350 Broadway
New York, New York 10018
(Tel) 212.216.8000
rwolf@tarterkrinsky.com
gskiff@tarterkrinsky.com

*Substitute Special Litigation Counsel to
the Chapter 7 Trustee*

_____s/ Colleen Harrison_____

Scott E. Gant (*pro hac vice*)
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Avenue NW
Washington, DC 20015
T: 202-237-2727
F: 202-237-6131
E: sgant@bsfllp.com

Colleen A. Harrison
BOIES, SCHILLER & FLEXNER LLP
26 South Main Street
Hanover, NH 03755
T: 603-643-9090
F: 603-643-9010
E: charrison@bsfllp.com

*Attorneys for Defendants Harold Evans and
Tina Brown*

Dated: October 28, 2015

**IT IS SO ORDERED:**

**s/Michael E. Wiles**
Michael E. Wiles
UNITED STATES BANKRUPTCY JUDGE